UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| ABIGAIL DIRKSING, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 5:20-cv-263-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SAFECO INSURANCE COMPANY OF | ) | **AND ORDER** |
| ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\*

This matter is before the Court upon motion of Defendant Safeco Insurance Company of Illinois ("Safeco") to disqualify counsel for Plaintiff Abigail Dirksing. [DE 11]. The motion has been fully briefed by the parties and is ripe for review. [DEs 11, 12, 13]. For the reasons set forth herein, Safeco's Motion to Dismiss is **GRANTED**.

### I.  PROCEDURAL & FACTUAL HISTORY

This matter is a dispute arising out of a motor vehicle accident involving Plaintiff Abigail Dirksing on November 10, 2017, in Lexington, Kentucky. [DE 11 at 2]. Plaintiff was listed as a rated driver under a policy provided by Defendant Safeco, which also included provisions for underinsured motorist ("UIM") coverage. [*Id.*].

Soon after the accident, Plaintiff retained Graydon, Head & Ritchey LLP ("Graydon") to represent her in this matter. [*Id.*].

Graydon attorney Daniel Knechht and Safeco were in contact regarding the policy limits and claims process between late 2017 and 2019. [*Id.*]. Around August 2019, attorney Roula Allouch joined Graydon and began assisting Knecht in negotiating Plaintiff's claim. [DE 12 at 2]. Allouch continued communicating with Safeco adjusters through early 2020, until a Complaint was filed in Fayette Circuit Court against Safeco for UIM benefits and alleging bad faith. [*Id.*; DE 11 at 2]. Allouch and Knecht were the primary attorneys of record. [*Id.* at 2, 15]. Shortly thereafter, the matter was removed to this Court. [*See* DE 1]. The Court eventually entered an Order bifurcating the claims in order to resolve the UIM claim prior to discovery on the bad faith portion of Plaintiff's claims. [DEs 8, 10].

Just over a month after the Notice of Removal was filed, Allouch withdrew as counsel for Plaintiff. [DE 5]. Attorneys Knecht and Stephen Smith of Graydon continue to represent Plaintiff in this matter.

Prior to joining Graydon, Allouch worked for a firm in Cincinnati, OH, which represented Liberty Mutual and its affiliates, including Safeco, in UIM litigation. [DE 11 at 2-3; *See also* DE 11-1]. Given Allouch's prior work and involvement in the instant action, Safeco moved to disqualify Graydon from representing Plaintiff in this case. [DE 11]. Safeco argues that disqualification is necessary because the subject matter in which

Allouch previously represented it is substantially-related to the current action; and in that capacity, Allouch obtained confidential information related to Safeco's claims handling procedures, litigation tactics, and general strategies which could be used to its disadvantage. [*Id.* at 2-6; DE 13]. Plaintiff contends that there is a lack of a substantial relationship between Safeco policyholders, and that Safeco has failed to introduce evidence of confidential information that Allouch obtained and used. [DE 12 at 4-8]. Being fully briefed and ripe for review, the Court will consider the matter.

## II. DISCUSSION

Motions to disqualify are governed by two sources of authority—local rules of the court hearing the motion and federal common law. *See Republic Servs., Inc. v. Liberty Mut. Ins. Co.*, No. CIVA 03-494 KSF, 2006 WL 3004014, at *4 (E.D. Ky. Oct. 20, 2006). Accordingly, attorneys appearing in the Eastern District of Kentucky are subject to the Kentucky Rules of Professional Conduct and the judicial decisions interpreting those rules and standards. *Id.*

In addition, district courts have inherent authority to disqualify attorneys as a sanction under federal common law for professionally unethical conduct. *Cavender v. U.S. Xpress Enters., Inc.*, 191 F. Supp. 2d 962, 965 (E.D. Tenn. 2002) (a court's authority to disqualify an attorney for unethical behavior derives

from the local rules of the court and federal law). When considering disqualification, however, courts must also be "sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of its choice." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988). Because disqualification separates a party from the counsel of their choice with immediate and measurable effect, disqualification is considered "a drastic measure which courts should be hesitant to impose except when absolutely necessary." *Standard Retirement Servs., Inc. v. Kentucky Bancshares, Inc.*, No. 5:14-026-DCR, 2014 WL 4783016, at *5 (E.D. Ky. Sep. 24, 2014) (citing *Zurich Ins. Co. v. Knotts*, 52 S.W. 3d 555, 560 (Ky. 2001)). Therefore, "resolving these competing interests requires the court to balance the interest of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation." *Umphenour v. Mathias*, No. 07-427-KSF, 2008 WL 2785609, at *2 (E.D. Ky. July 16, 2008) (citing *General Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 715 (6th Cir. 1982)).

Here, the Kentucky Rules of Professional Conduct, under Kentucky Supreme Court Rule 3.130, are relevant to the Court's review of the conduct at issue in this matter. Specifically, Rule 1.9, entitled "Conflict of Interest: former client," states, in relevant part:

A lawyer who has formerly represented a client in a matter shall not thereafter:

> (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse tot eh interests of the former client unless the former client consents after consultation;
>
> . . .
>
> (c) A lawyer who has formerly represented a client in a matter of whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
>> (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known; or
>>
>> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

SCR 3.130(1.9).

Additionally, Rule 1.10, entitled "Imputed disqualification: general rule," governs disqualifications which may be imputed to an entire firm, which states:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.
>
> . . .
>
> (d) A firm is not disqualified from representation of a client if the only basis for disqualification is representation of a former client by a lawyer presently associated with the firm, sufficient cause that lawyer to be disqualified pursuant to Rule 1.9 and:

5

> (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no specific part of the fee therefrom; and
>
> (2) written notice is given to the former client.

SCR 3.130(1.10).

The Sixth Circuit has articulated a three-part test for disqualifying counsel. That is, an attorney should be disqualified only if a Court finds that (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. *See Dana Corp v. Blue Cross Blue Shield Mut. of Northern Ohio*, 900 F.2d 882, 889 (6th Cir. 1990). Here, Safeco contends that all three prongs are met and that the conflict should be imputed to the entire Graydon firm. The Court agrees.

As an initial matter, Plaintiff comments that Safeco's motion is premature, as the UIM and bad faith claims have been bifurcated. [DE 12 at 5-6]. Safeco responds arguing that failing to file the motion at this time may result in waiving the conflict in the later stages of litigation. [DE 13 at 3-4]. Generally, motions to disqualify should be made with reasonable promptness. *See Lee v. Todd*, 555 F. Supp. 628, 632 (W.D. Tenn. 1982); *Lani on behalf of Schiller Kessler & Gomez, PLLC v. Schiller Kessler & Gomez, PLC*, 2017 WL 938327, at *3 (W.D. Ky., Mar. 9, 2017). Nevertheless, as

addressed below, the overall representation, including litigation strategies, that Allouch provided for Safeco on other UIM claims is substantially related to this matter, and the conflict presently exists.

Neither party disputes that Allouch had a past attorney-client relationship with Safeco. This is also evidenced by filings proffered by Safeco showing that Allouch drafted answers and corresponded on behalf of Safeco in several matters in 2018. [DE 11-1]. Thus, the first prong of the *Dana Corp* test is met and the Court will turn to the next two prongs disputed by the parties.

To determine whether the attorney-client relationships are substantially related, the Court must "look to the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now adverse client." *Bowers v. Ophthalmology Group*, 733 F.3d 647, 652 (6th Cir. 2013). This analysis essentially makes the final two prongs of *Dana Corp* interdependent on one another. "Admittedly, this approach has its difficulties, most notably in reconstructing a representation using generalities is less exact than examining what actually happened. Nonetheless, this method presents a necessary alternative to engaging with the specific—perhaps confidential—facts surrounding a potentially conflicted attorney's prior representation of a now-adverse client." *Id.* Thus, the Court must examine whether there is a

substantial risk that confidential information, as would normally or typically have been obtained in Allouch's prior representation of Safeco, would materially advance Plaintiff's position in the present action. *See id.* at 653.

In her capacity as counsel on behalf of Safeco, Allouch handled matters involving claims for UIM coverage under automobile insurance policies issued by Safeco. [DE 11 at 5; DE 11-1]. Although similar to the claims raised here, Plaintiff attempts to differentiate the claims involved in this case from others that Allouch would have defended Safeco in. Specifically, Plaintiff contends that "the actual conduct of Safeco in its handling of *the instant* claim is the only evidence that has any relevance to Plaintiff's claim for bad faith." [DE 12 at 5 (*emphasis* in original)]. However, the substantial relationship test does not require the Court to review the specific facts of each matter under a microscope, but rather, focuses on the "general features of the matters involved." *Bowers*, 733 F.3d at 652-53.

To further demonstrate this, the Court finds the decision in *Republic Services, Inc. v. Liberty Mutual Co.* particularly useful. 2006 WL 3004014. At its core, *Republic Services* involved a contract dispute where allegations were made that the defendants failed to properly administer its workers' compensation program. *Id.* However, the Court was tasked with determining whether plaintiff's counsel should be disqualified from the case because of his past

8

representation of defendant. In finding that the two matters were substantially the same, the Court explained:

> A review of the Complaint in *Tony's Fine Foods* [the prior representation at issue] reveals claims for breach of contract, breach of duty of good faith and fair dealing, negligence, unfair business practice (including improper policy and marketing manipulations, misleading and fraudulent advertising and illusory coverage of the employer liability policy), all based upon a contractual relationship between Tony's Fine Foods and Liberty Mutual Insurance Company. Pursuant to their contractual relationship, Liberty Mutual, in return for substantial premiums, sold Tony's Fine Foods annual liability insurance policies which provided insurance coverage for, among other things, workers' compensation and employers' liability. The facts and issues involved in the Liberty Companies defense of *Tony's Fine Foods* case, while involving different claims files, are substantially the same as the facts and issues currently before this court—the mishandling of the Tony's Fine Foods and Republic's workers' compensation programs. Certainly, the same defenses, strategy and litigation tactics are implicated in both matters.

*Republic Servs., Inc. v. Liberty Mut. Ins. Co.*, 2006 WL 3004014, at *8.

Like the conflicted attorney in *Republic Services*, Allouch's initial representation in the present case involved allegations nearly identical to those she previously defended Safeco against— UIM insurance coverage disputes. Undoubtedly, in her capacity as Safeco's defense counsel, Allouch became uniquely familiar with the types of litigation strategies and tactics Safeco employs when handling UIM claims. Regardless of whether Allouch actually used it or revealed it to other members of the firm, confidential information concerning Safeco's practices and procedures, litigation strategies, and negotiation tactics could clearly

9

advance Plaintiff's position in a substantial way. *See Republic Servs., Inc.*, 2006 WL 3004014, at *8; *see also Pinnacle Sur. Servs., Inc. v. Loehnert*, No. 3:14-CV-425-H, 2014 WL 6610340, at *5-7 (W.D. Ky. Nov. 20, 2014) ("Moreover, the attorneys would learn Pinnacle's litigation and negotiation strategies . . . . This information that, but for their representation of Pinnacle [], these attorneys could not have otherwise obtained. If obtained, it would certainly be useful [] in litigation and potential settlement discussions in the present case."). Accordingly, although withdrawn, Allouch is disqualified from this matter.

Having determined that Allouch is disqualified from representing Plaintiff in this matter, the Court next considers whether her disqualification should be imputed to the entirety of Graydon. As noted above, Rule 1.10(a) provides "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2." An exception to this rule applies where the attorney is screened off and written notice has been provided to the past client. SCR 3.130(1.10)(d)(1)-(2).

Although Allouch has now withdrawn and been screened from this matter, her prior involvement essentially taints Graydon's ability to continue as counsel in this action. Moreover, the failure to provide written notice to Safeco prior to filing suit

further prevents Graydon from meeting the Rule 1.10 exception. As a consequence of Allouch's conflict of interest, the disqualification must be imputed to the remaining counsel from Graydon. Harsh as the result may be, Allouch's initial involvement and Graydon's failure to follow the requirements outlined under Rule 1.10 compels no other result. This is necessary in order to protect the "reasonable expectations of former and present clients" and "promotes the public's confidence in the integrity of the legal profession." *Republic Servs., Inc.*, 2006 WL 3004014, at *11 (quoting *Lovell v. Winchester*, 941 S.W.2d 466, 469 (Ky. 1997)).

### III. CONCLUSION

Having considered the matter fully, and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendant Safeco's Motion to Disqualify Counsel [DE 11] is **GRANTED**, and the firm of Graydon, Head & Ritchey LLP is hereby **DISQUALIFIED** from representing Plaintiff Abigail Dirksing in this matter;

(2) All discovery deadlines and proceedings in this matter are **STAYED** for sixty (60) days, to provide time for Plaintiff Abigail Dirksing to retain new counsel;

(3) Plaintiff Abigail Dirksing **SHALL** enter an appearance of new counsel, or file the appropriate forms to proceed *pro se* **within sixty (60) days** of entry of this Order;

(4) The Scheduling Order [DEs 8, 10] in this matter is **VACATED**;

(5) **Within fourteen (14) days** of the filing of a notice of appearance of new counsel on behalf of Plaintiff Abigail Dirksing, the parties, by counsel, shall meet, either in person or by telephone, to discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case to make or arrange for the disclosures required by Fed. R. Civ. P. 26(a)(1), as amended December 1, 2010, and to develop a proposed discovery plan. *See* Fed. R. Civ. P. 26(f), as amended December 1, 2015; and

(7) **Within ten (10) days** after the meeting the parties shall file a joint status report containing:

> (a) the discovery plan; in formulating their plan, the parties should consider the Court's belief that discovery should last between three and five months;
>
> (b) the parties' estimate of the time necessary to file pretrial motions;
>
> (c) the parties' estimate as to the probable length of trial;
>
> (d) the dates mutually convenient for trial;

(e) the parties' decision as to whether the action may be referred to a United States magistrate judge for trial pursuant to 28 U.S.C. § 636(c); and

(f) the parties' determination as to whether the resolution of the case may be aided by mediation or other special procedures as authorized by statute or local rule;

This the 22nd day of June, 2021.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge